1

2

3

4

5

6

7

8 **IN THE UNITED STATES DISTRICT COURT**

9 **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11 GEORGE WAYNE ANDERSON,                     No. CIV S-09-3416-CMK

12                    Plaintiff,

13          vs.                                              MEMORANDUM OPINION AND ORDER

14 COMMISSIONER OF SOCIAL
   SECURITY,
15
                     Defendant.
16 _____/

17              Plaintiff, who is proceeding with retained counsel, brings this action for judicial

18 review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).

19 Pursuant to the written consent of all parties, this case is before the undersigned as the presiding

20 judge for all purposes, including entry of final judgment.  See 28 U.S.C. § 636(c).  Pending

21 before the court are plaintiff's motion for summary judgment (Doc. 17) and defendant's cross-

22 motion for summary judgment (Doc. 19).  For the reasons discussed below, the court will grant

23 plaintiff's motion for summary judgment and remand this matter for either payment of benefits or

24 further proceedings.

25 / / /

26 / / /

# I. PROCEDURAL HISTORY[1]

Plaintiff applied for social security benefits on May 25, 2006, alleging an onset of disability on September 8, 2002, due to physical impairments. (Certified administrative record ("CAR") 43, 67-74, 77-87.)  Specifically, plaintiff claims disability based on impairments of the back, knee injury, arthritis, headaches, and bilateral carpal tunnel.  (CAR 78).  Plaintiff's claim was denied initially and upon reconsideration.  Plaintiff requested an administrative hearing, which was held on October 23, 2007, before Administrative Law Judge ("ALJ") Sandra K. Rogers.  In a February 20, 2008, decision, the ALJ concluded that plaintiff is not disabled[2] based

---

[1] Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the undersigned does not exhaustively relate those facts here.  The facts related to plaintiff's impairments and medical history will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income ("SSI") is paid to disabled persons with low income.  42 U.S.C. § 1382 et seq.  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation

on the following findings:

1. The claimant meets the insured status requirements of the Social Security Act though September 30, 2007.

2. The claimant has not engaged in substantial gainful activity since September 8, 2002, the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq.*).

3. The claimant has the following severe impairments: back, knee and bilateral carpal tunnel syndrome impairments. (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as follows: able to lift 20 pounds occasionally and 10 pounds frequently; stand, walk or sit for 6 hours in an 8 hour day; could occasionally balance, stoop kneel, crouch, crawl and climb; cannot do any forceful gripping, grasping, torquing or twisting with either hand.

6. The claimant is unable to perform any past relevant work. (20 CFR 404.1565).

7. The claimant was born on June 6, 1954 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566).

---

process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

11.     The claimant has not been under a disability, as defined in the
        Social Security Act, from September 8, 2002 through the date of
        this decision (20 CFR 404.1520(g)).

CAR 17-24.  After the Appeals Council declined review on October 30, 2009, this appeal

followed.

## II.  STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is:

(1) based on proper legal standards; and (2) supported by substantial evidence in the record as a

whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is

more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521

(9th Cir. 1996).  It is "such evidence as a reasonable mind might accept as adequate to support a

conclusion."  Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including

both the evidence that supports and detracts from the Commissioner's conclusion, must be

considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v.

Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's

decision simply by isolating a specific quantum of supporting evidence.  See Hammock v.

Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative

findings, or if there is conflicting evidence supporting a particular finding, the finding of the

Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

Therefore, where the evidence is susceptible to more than one rational interpretation, one of

which supports the Commissioner's decision, the decision must be affirmed, see Thomas v.

Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal

standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th

Cir. 1988).

## III.  DISCUSSION

Plaintiff argues the ALJ erred in four ways: (1) the ALJ erred in her treatment of

the medical opinions; (2) the ALJ improperly discounted plaintiff's credibility; (4) the ALJ's

4

1   residual functional capacity assessment was erroneous; and (4) the ALJ improperly rejected the

2   vocational expert's testimony and improperly utilized the "Grids[3]".

3               **A.    MEDICAL OPINIONS**

4               Plaintiff contends the ALJ made a reversible error in finding him capable of light

5   work when both the treating and examining physicians found he could not.  Defendant argues the

6   ALJ appropriately weighed the medical opinions, and resolved the disputes among contradicting

7   opinions.

8               The weight given to medical opinions depends in part on whether they are

9   proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d

10  821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating

11  professional, who has a greater opportunity to know and observe the patient as an individual,

12  than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285

13  (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given

14  to the opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4

15  (9th Cir. 1990).

16              In addition to considering its source, to evaluate whether the Commissioner

17  properly rejected a medical opinion the court considers whether:  (1) contradictory opinions are

18  in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an

19  uncontradicted opinion of a treating or examining medical professional only for "clear and

20  convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831.

21  While a treating professional's opinion generally is accorded superior weight, if it is contradicted

22  by an examining professional's opinion which is supported by different independent clinical

23  findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035,

24  1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be

25  ──────────────

26      [3]      The Medical-Vocational Guidelines are commonly referred to as the "Grids."  See
    20 C.F.R., Part 404, Subpart P, Appendix 2.

rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester,

81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of

the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a

finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and

legitimate reasons, the Commissioner must defer to the opinion of a treating or examining

professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional,

without other evidence, is insufficient to reject the opinion of a treating or examining

professional.  See id. at 831.  In any event, the Commissioner need not give weight to any

conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111,

1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion);

see also Magallanes, 881 F.2d at 751.

In her decision, the ALJ discussed the medical opinions as follows:

A Complete Medical Report (Physical) was prepared by
Gilbert Silva, PAC. It diagnosed the claimant with osteoarthritis,
chronic back pain, diabetes mellitus II, obesity and recurrent
kidney stones.  The claimant could occasionally lift/carry up to 20
pounds.  The claimant could sit for a total of 4 hours; stand for a
total of 3 hours and walk for a total of 1 hour in an 8 hour
workday.  The claimant could occasionally use his right hand and
feet.  He could occasionally climb, balance, stoop, kneel and crawl
but never crouch.  He could also occasionally reach, handle and
push/pull but frequently feel, hear and speak.  The claimant was to
avoid all exposure to heights, moving machinery, temperature
extremes and vibrations.  He was to avoid even moderate exposure
to chemicals, noise, humidity, dust and fumes.  The individual who
completed this form is not a medical doctor and cannot provide
evidence to establish a medically determinable impairment; the
individual's views can, however, be considered as evidence of the
severity of the claimant's impairments and as evidence of how
those impairments affect the claimant's ability to work (20 CFR §
404.1513(a) & (d)).  Appropriately limited to the severity of the
claimant's impairments and their affect on the claimant's ability to
work, I give little weight to this assessment as it is inconsistent
with the weight of the evidence of record.

A Physical Residual Functional Capacity Assessment was
prepared by a Social Security Administration medical consultant
and dated September 21, 2006.  It determined that the claimant
could lift/carry 20 pounds occasionally and 10 pounds frequently;

stand and/or walk (with normal breaks) for a total of about 6 hours
in an 8-hour workday; sit (with normal breaks) for a total of about
6 hours in an 8-hour workday; and, push and/or pull was limited in
the upper extremities.  The claimant could occasionally climb,
balance, stoop, kneel, crouch and crawl.  Fingering (fine
manipulation) was limited.  The claimant had no visual,
communicative or environmental limitations.  I give great weight
to these findings because the form is complete, the findings are
greatly consistent with the record as a whole and the medical
consultant's specialty is internal medicine.

A Complete Internal Medicine Evaluation was completed
by Joseph Garfinkel, M.D., and dated August 10, 2006.  It noted
the following impressions:  chronic low back pain with some
radicular signs; migraine headaches; carpal tunnel, left wrist; status
post carpal tunnel surgery to right wrist; and arthritis of multiple
joints most likely from moderate osteoarthritis.  The claimant
could lift or carry 20 pounds occasionally and 10 pounds
frequently; could stand or walk/sit for up to 6 hours out of an 8-
hour day; must periodically alternate sitting and standing to relieve
pain or discomfort every 2 hours; can occasionally climb, stoop,
kneel or crouch; and is limited in fine manipulation of the bilateral
hands.  I give some weight to these findings because they are
somewhat consistent with the record as a whole and Dr. Garfinkel
is board eligible in internal medicine.

A Qualified Medical Legal Evaluation was prepared by
Max Moses, M.D., and dated November 20, 2004.  It noted that the
claimant fell at work on September 8, 2002.  The claimant was
precluded from very heavy lifting, prolonged weight bearing or
prolonged sitting.  Dr. Moses noted in a Supplemental Qualified
Medical Legal Report that he would not change the opinions and
recommendations outlined in his original evaluation.  I give
appropriate weight to these findings because they are the result of
an in-person examination and are contained in a thorough and
detailed report.

(CAR at 21-22).

Plaintiff's argument as to the medical opinions is that "[i]t was reversible error for

Judge Rogers to find the claimant capable of light work when the claimant's treating and

examining physicians found he could not."  This is the sum of his argument, without

enlightening the court any further.  A review of the medical opinions, however, reveals that, as

/ / /

/ / /

/ / /

7

1    defendant contends, none of the medical opinions[4] found plaintiff incapable of light work.

2    Rather, the opinions were somewhat inconsistent in the assessment of plaintiff's ability to use his

3    hands.

4            The medical opinions, as outlined in the ALJ's decision, all found plaintiff

5    capable of light work, including the ability to lift 10 to 20 pounds, but generally limited his

6    ability as to fine manipulation with his hands.  There are treatment notes included in the record

7    where no manipulative limitations are noted; however, those treatment notes simply do not

8    address manipulative limitations.  There is no medical opinion in the record which the court has

9    found or the parties have cited which actually state that plaintiff has no manipulative limitations.

10   This is the case with the Qualified Medical Legal Evaluation (QME) discussed in the ALJ's

11   opinion.  Dr. Moses evaluated Plaintiff relating to his workers' compensation injury, his back,

12   and was not evaluating his manipulative abilities.  While Dr. Moses indicates no specific

13   limitations as to plaintiff's manipulative abilities and notes no deformity or tenderness in

14   plaintiff's wrist, as well as a normal range of motion, Dr. Moses was assessing plaintiff's abilities

15   relating to his back injury.  Thus, the lack of finding manipulation limitations is not necessarily

16   contradictory to the other opinions.[5] (CAR 187-197).

17   / / /

18

19          [4]    An opinion by a physician's assistant, as set forth in the ALJ's opinion, did find
     plaintiff more limited as to his sit/stand/walk abilities.  However, as discussed infra, this opinion,
20   even if credited, would not change the outcome of this case.  In addition, the ALJ properly
     addressed it as a physician's assistant's opinion is not an "acceptable medical source."  See 20
21   CFR § 404.1513(d).  The ALJ stated she gave the assessment little weight as it was inconsistent
     with the other evidence.  The undersigned finds no error in this assessment.

22          [5]    Similarly, the opinion submitted by Dr. Wall after the ALJ had rendered her
     decision is not necessary a conflicting opinion as Dr. Wall also assesses plaintiff with some, but
23   not complete, limitations in the use of his hands.  In addition, as defendant argues, Dr. Wall's
     opinion does not provide sufficient explanation for the limitations assessed.  Instead of setting
24   forth the medical findings supporting the assessment, as required by the form, Dr. Wall simply
     notes pain and stiffness related to osteoarthritis ("Pain R/T OA; Pain + joint stiffness R/T OA")
25   (CAR 290).  The failure of the Appeals Council to address Dr. Wall's opinion may therefore be
     harmless.  However, as discussed infra, even without Dr. Wall's opinion, the RFC determination
26   was not supported by the medical opinions accepted by the ALJ.

The undersigned finds no error in the ALJ's treatment of the medical opinions in the record. The ALJ provided sufficient reasons as to her decision to accord appropriate weight to each of the decisions, and that decision is supported by the evidence in the record. In addition, the undersigned does not find significant differences in the medical opinions rendered and accepted by the ALJ. Both the examining and non-examining physicians found Plaintiff capable of lifting 20 pounds occasionally, ten pounds frequently; sitting, standing and/or walking for six hours in an eight-hour workday (with normal breaks and alternating); postural limitations relating to climbing, balancing, etc.; and limitations of fine manipulations. These opinions are not contradicted by the QME who only addressed plaintiff's lifting and sitting abilities. Thus, the undersigned finds no error in ALJ's acceptance, and treatment, of these medical opinions.

## B.    PLAINTIFF'S CREDIBILITY

Plaintiff contends the ALJ erred in her credibility determination, finding "plaintiff's testimony not credible when his testimony was supported by all of the medical record and by the testimony of the vocational expert."

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit credibility finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

/ / /

1         If there is objective medical evidence of an underlying impairment, the

2    Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely

3    because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d

4    341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

> 5         The claimant need not produce objective medical evidence of the
>      [symptom] itself, or the severity thereof.  Nor must the claimant produce
> 6    objective medical evidence of the causal relationship between the
>      medically determinable impairment and the symptom.  By requiring that
> 7    the medical impairment "could reasonably be expected to produce" pain or
>      another symptom, the Cotton test requires only that the causal relationship
> 8    be a reasonable inference, not a medically proven phenomenon.

9    80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799

10   F.2d 1403 (9th Cir. 1986)).

11        The Commissioner may, however, consider the nature of the symptoms alleged,

12   including aggravating factors, medication, treatment, and functional restrictions.  See Bunnell,

13   947 F.2d at 345-47.  In weighing credibility, the Commissioner may also consider: (1) the

14   claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent

15   testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a

16   prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5)

17   physician and third-party testimony about the nature, severity, and effect of symptoms.  See

18   Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the

19   claimant cooperated during physical examinations or provided conflicting statements concerning

20   drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the

21   claimant testifies as to symptoms greater than would normally be produced by a given

22   impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See

23   Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

24        Regarding reliance on a claimant's daily activities to find testimony of disabling

25   pain not credible, the Social Security Act does not require that disability claimants be utterly

26   incapacitated.  See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989).  The Ninth Circuit has

1  repeatedly held that the "mere fact that a plaintiff has carried out certain daily activities . . . does

2  not . . .[necessarily] detract from her credibility as to her overall disability."  See Orn v. Astrue,

3  495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th Cir.

4  2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a claim

5  of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted

6  travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the claimant

7  was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook

8  meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home activities are not

9  easily transferable to what may be the more grueling environment of the workplace, where it

10  might be impossible to periodically rest or take medication").   Daily activities must be such that

11  they show that the claimant is "able to spend a substantial part of his day engaged in pursuits

12  involving the performance of physical functions that are transferable to a work setting."  Fair,

13  885 F.2d at 603.  The ALJ must make specific findings in this regard before relying on daily

14  activities to find a claimant's pain testimony not credible.  See Burch v. Barnhart, 400 F.3d 676,

15  681 (9th Cir. 2005).

16      Here, the ALJ stated:

17          The claimant's statements and those of third parties
        concerning the claimant's impairments and their impact on the
18      claimant's ability to work are not credible in light of discrepancies
        between the claimant's assertions and information contained in the
19      documentary reports and the reports of the treating and examining
        practitioners.  Although I do not find the claimant at all times
20      symptom free, the evidence does not support the degree of
        limitation the claimant alleges.

21
            Although the claimant has described daily activities which
22      are fairly limited, two factors weigh against considering these
        allegations to be strong evidence in favor of finding the claimant
23      disabled.  First, the allegedly limited daily activities cannot be
        objectively verified with any reasonable degree of certainty.
24      Secondly, even if the claimant's daily activities are truly as limited
        as alleged, it is difficult to attribute that degree of limitation to the
25      claimant's medical condition, as opposed to other reasons, in view
        of the relatively weak medical evidence and other factors discussed
26      in this decision.

> The claimant has not generally received on-going and continuous medical treatment of the type one would expect for a totally disabled individual and the claimant's alleged loss of function is not supported by objective medical findings.  I also note that some of the claimant's subjective symptoms are unsupported by objective medical tests.
>
> Another factor influencing the conclusions reached in this decision is the claimant's generally unpersuasive appearance, presentation and demeanor while testifying at the hearing.  It is emphasized that this observation is only one among many being relied on in reaching a conclusion regarding the credibility of the claimant's allegations and the claimant's residual functional capacity and not determinative.

(CAR 20-21).

Plaintiff argues the ALJ erred in her determination that his testimony was not credible as it was supported by the medical records and the ALJ based her determination of his appearance at the hearing.  Defendant counters that the ALJ supported her determination based on several legally sound reasons.

The ALJ noted several reasons for finding plaintiff's testimony not credible.  She noted the "discrepancies between the claimant's assertions and information contained in the documentary reports and the reports of the treating and examining practitioners."  She also noted that plaintiff's limited daily activities could not be verified, and that it was not clear the limitations in his daily activities are attributed to his medical condition as opposed to other reasons.  The ALJ further noted the relatively weak medical evidence, including the lack of "on-going and continuous medical treatment of the type one would expect for a totally disabled individual" and the lack of objective medical findings to support his alleged loss of function and subjective symptoms.  Finally, the ALJ found plaintiff's "appearance, presentation and demeanor" at the hearing to be unpersuasive.

The court does not substitute its own judgment over that of the ALJ's when there is evidence which reasonably supports either confirming or reversing the ALJ's decision.  See Tackett v. Apfel, 180 F.3d 1094,1098 (9th Cir. 1999).  This applies to the ALJ's credibility determination as well.  Contrary to plaintiff's argument, the ALJ did not rely solely on his

1    appearance at the hearing.  Instead, the ALJ set forth several reasons for her determination,

2    including the weak medical evidence and inconsistencies in the record.  These are clear and

3    convincing reasons, as set forth in the ALJ's opinion, and they are supported by substantial

4    evidence in the record.  While the ALJ's interpretation of plaintiff's testimony and other

5    evidence may not be the only reasonable one, it is still a reasonable interpretation and is

6    supported by substantial evidence.  Providing the ALJ's decision with the proper deference, the

7    court finds the ALJ's credibility determination was not erroneous.

8              **C.      RESIDUAL FUNCTIONAL CAPACITY DETERMINATION**

9              Plaintiff next contends the ALJ erred in her assessment of his residual functional

10   capacity (RFC).  He specifically takes issue with the ALJ's determination that he could perform a

11   variety of light work because all light work requires the good use of both hands for fine

12   manipulation, where plaintiff is limited.  Defendant counters that the ALJ's determination was

13   proper in light of the medical evidence and opinions.

14             As noted above, the medical opinions in the record all basically determined

15   plaintiff was capable of light work, defined as that involving lifting no more than 20 pounds at a

16   time with frequent lifting or carrying of objects weighing up to 10 pounds.  See 20 C.F.R. §§

17   404.1567(b) and 416.967(b).  In addition, they assessed plaintiff with limited fine manipulation

18   abilities.  The ALJ, however, assessed plaintiff with a limitation in his ability to forcefully grip,

19   grasp, torque or twist, rather than a limited fine manipulation ability.  The ALJ fails to support

20   this modification.  None of the examining or reviewing physicians indicate a limitation in

21   plaintiff's ability to forcefully grip, grasp, torque or twist.  Instead, they found his fine

22   manipulation ability was limited.  The fine manipulaiton limitation is missing from the ALJ's

23   RFC.  This is material in that the hypothetical posed to the vocational expert (VE) at the hearing

24   failed to include the proper limitation, which then provided the incorrect assessment of the

25   availability of jobs in the national economy which plaintiff  is able to perform.

26   / / /

1    The undersigned therefore finds the ALJ erred in her determination of plaintiff's

2    RFC.  The ALJ credited the agency physician's opinion as to plaintiff's limitations, which

3    included a fine manipulation limitation.  The ALJ gave no reasons in her decision to modify that

4    fine manipulation limitation into a limitation relating to the forceful gripping, grasping, torquing

5    or twisting as set forth in the RFC.  The proper RFC determination should have included the

6    following limitations, as supported by the medical opinions the ALJ gave great weight to:

> The plaintiff has the residual functional capacity to perform light
> work as follows:  able to lift 20 pounds occasionally and 10 pounds
> frequently; stand, walk or sit for 6 hours in an 8 hour day; could
> occasionally balance, stoop kneel, crouch, crawl and climb; is
> limited in fine manipulation of both hands.

10    As discussed in more detail below, the undersigned finds this error to be

11   reversible.

## D.  VOCATIONAL EXPERT

13    Finally, plaintiff argues the ALJ erred by failing to pose a proper hypothetical[6] to

14   the vocational expert at the hearing.  Defendant counters that the ALJ's hypothetical question

15   was proper as it contained all of plaintiff's limitations the ALJ assessed in his RFC.

16    The ALJ may meet his burden under step five of the sequential analysis by

17   propounding to a vocational expert hypothetical questions based on medical assumptions,

18   supported by substantial evidence, that reflect all the plaintiff's limitations.  See Roberts v.

19   Shalala, 66 F.3d 179, 184 (9th Cir. 1995).  Specifically, where the Medical-Vocational

20   Guidelines are inapplicable because the plaintiff has sufficient non-exertional limitations, the

21   ALJ is required to obtain vocational expert testimony.  See Burkhart v. Bowen, 587 F.2d 1335,

---

23    [6]    Plaintiff also argues that the ALJ erred in her use of the Medical-Vocational Rules
24   (the "Grids") based on the use of an incorrect age.  However, the use of the Grids is not an issue
     here as the undersigned finds the use of a vocational expert is necessary to determine plaintiff's
     abilities given his non-exertional limitations relating to the use of his hands.  As discussed below,
25   the hypothetical posed to the VE was insufficient.  He also argues the hypothetical should have
     included the need for five to six breaks per day for taking medication.  The undersigned agrees
26   with defendant that such a limitation is not supported by the record.

1   1341 (9th Cir. 1988).

2          Hypothetical questions posed to a vocational expert must set out all the

3   substantial, supported limitations and restrictions of the particular claimant.  See Magallanes v.

4   Bowen, 881 F.2d 747, 756 (9th Cir. 1989).  If a hypothetical does not reflect all the claimant's

5   limitations, the expert's testimony as to jobs in the national economy the claimant can perform

6   has no evidentiary value.  See DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).  While

7   the ALJ may pose to the expert a range of hypothetical questions based on alternate

8   interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's

9   determination must be supported by substantial evidence in the record as a whole.  See Embrey v.

10  Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

11          Here, the hypothetical the ALJ posed to the VE failed to include plaintiff's fine

12  manipulation limitation.  Instead, the ALJ posed the following hypothetical:

13              If we assume a person the same age, education, and work
                experience as the claimant and if we assume as is set forth in
14              Exhibit 11F that they're able to lift 20 pounds occasionally, ten
                frequently; let's see, stand, walk, or sit six hours in an eight-hour
15              day; could occasionally balance, stoop, kneel, crouch, crawl, and
                climb; and I'm just trying to see if they quantify this somewhere,
16              cannot do any forceful gripping, grasping, torquing, or twisting
                with either hand.  Would such a person be ale to perform the
17              claimant's past relevant work?(CAR 39-40).

18  Based on the erroneous RFC, this hypothetical was insufficient.  The ALJ cited Exhibit 11F as

19  the basis for this hypothetical, which is the same opinion she cited as giving great weight to for

20  assessing the RFC.  As discussed above, however, the medical opinion did not put a limitation on

21  plaintiff's ability to forcefully grip, grasp, torque or twist with his hands.  Rather, the limitation

22  was to avoid frequent fingering (fine manipulation) with both hands.  (CAR 229).  In response to

23  this hypothetical, the VE testifed that plaintiff would be precluded from his past relevant work,

24  due to the forceful gripping and grasping limitation.  (CAR 40).  The VE then provided two

25  examples of jobs that plaintiff would be able to perform, available in sufficient numbers even

26  with the limitation in forcefully gripping, grasping, torquing and twisting.

1    Plaintiff's attorney then followed up on the ALJ's hypothetical with the following

2  question posed to the VE:

3         On the same hypothetical on this Exhibit F, with the limitation of
          being able to only occasionally perform fine manipulation, would
4         that erode the jobs that, that you discussed?  (CAR 40).

5  In response, the VE stated that the additional limitation, fine manipulation, would completely

6  erode the two examples of jobs the VE provided.  The VE was not, however, questioned further

7  as to whether there would be jobs in the national economy plaintiff could do based on all of his

8  limitations.

9          The undersigned therefore finds the testimony elicited from the VE was

10  insufficient to conclusively determine whether jobs exist that plaintiff is capable of performing.

11  This also constitutes reversible error.

12         **E.     APPROPRIATE REMEDY**

13         The undersigned finds, based on the errors set forth above, it appropriate to

14  remand this matter.  It is in the court's discretion whether to remand for benefits or further

15  proceedings. See Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987).  The appropriate

16  remedy in this matter may in fact be a remand for payments of benefits.  If assessed with the

17  proper limitations, and based on the VE's testimony as to job availability with the proper

18  limitations assessed, it would appear that plaintiff would be considered disabled as there are no

19  jobs for which plaintiff can perform.  However, the testimony of the VE, while hinting at such a

20  finding, stops short of conclusively finding no jobs available as the specific question was not

21  asked.  As such, upon remand, defendant may either decide to simply find plaintiff disabled,

22  based on the discussion above, and award payment; or in the alternative, defendant may resubmit

23  this matter to the ALJ with the specific direction to conduct a new hearing in which a VE is

24  called to testify about job availability based on the proper RFC set forth above.  If defendant

25  decides to hold a new hearing, the VE must be questioned as to plaintiff's ability to perform jobs

26  in the national economy given all of plaintiff's limitations, including his lifting/carrying

1    limitations and his fine manipulation limitations.

2                              **IV.  CONCLUSION**

3               For the foregoing reasons, this matter will be remanded under sentence four of 42

4    U.S.C. § 405(g) for payment of benefits or further development of the record as specifically set

5    forth above.

6               Accordingly, IT IS HEREBY ORDERED that:

7               1.      Plaintiff's motion for summary judgment (Doc. 17) is granted;

8               2.      Defendant's cross motion for summary judgment (Doc. 19) is denied;

9               3.      This matter is remanded for payment or further proceedings consistent

10   with this order; and

11              4.      The Clerk of the Court is directed to enter judgment and close this file.

12

13    DATED:  March 15, 2011

14                                                    _____

15                                                    **CRAIG M. KELLISON**
                                                     UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25

26